NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KENNETH STUESSI, | |
| Plaintiff, | Civil Action No. 16-3547 (BRM) |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | OPINION |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Kenneth Stuessi's ("Stuessi") appeal from the final decision of the Acting Commissioner of Social Security ("Commissioner")[1] denying his application of Supplemental Security Insurance benefits ("SSI"), alleging disability beginning December 31, 2009. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Civil Rule 78(b), for the reasons set forth below and for good cause shown, the matter is **REMANDED** for further proceedings.

**I.     BACKGROUND**

On February 28, 2012, Stuessi applied for SSDI benefits, alleging disability beginning December 31, 2009, due to depression, anxiety, attention deficit hyperactivity disorder, bipolar

---

[1] Upon the Appeals Council's Order denying Plaintiff's request for a review of the Administrative Law Judge's ("ALJ") decision, the ALJ's decision became the final decision of the Commissioner. (Tr. 1.)

disorder, and diabetes. The claim was denied initially on August 16, 2012, and denied on reconsideration on December 12, 2012. (Tr. 62-83.) On February 14, 2013, Stuessi filed a written request for a hearing (Tr. 95), and, on August 19 and December 3, 2014, hearings were held at which Stuessi appeared and testified. (Tr. 32-61.) Tanya M. Edghill, an impartial vocational expert ("VE"), testified at the December 2014 supplemental hearing. (Tr. 56-61.)

On December 19, 2014, the ALJ denied Stuessi's claim (Tr. 17-31), finding, at step five, that Stuessi was not disabled (Tr. 26-27). In reach this conclusion, the ALJ found, at step one, Stuessi had not engaged in substantial gainful activity since the alleged onset date. (Tr. 22 (citing 20 C.F.R. § 416.971).) At step two, the ALJ determined Stuessi had "severe" impairments in the form of depression, anxiety, bipolar disorder, attention deficit disorder, and borderline personality disorder. (Tr. 22 (citing 20 C.F.R. § 416.920(c)).) At step three, the ALJ concluded Stuessi did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 22 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).) Stuessi does not dispute these findings.

> Before proceeding to step four, the ALJ determined Stuessi
>
>> has the residual functional capacity to perform a full range at all exertional levels, but with the following non-exertional limitations: The claimant retains the ability to perform simple routine tasks. He must have a low stress work environment, which I define as occasional contact with co-workers and supervisors, no direct work-related contact with the public, no working on teams or in collaboration with others, involving only simple decisions and involving only occasional changes in essential work tasks.

(Tr. 23-24.) The ALJ stated, "In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . . I have also considered opinion evidence . . . ." (Tr. 24 (citing 20 C.F.R. §§ 416.927, 416.929).) Ultimately, the ALJ found, "[a]fter careful consideration of the

2

evidence, . . . the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (Tr. 24.)

At step five, the ALJ relied on the VE's testimony, as well as Stuessi's age, education, work experience, and RFC, to find Stuessi is not disabled because he "is capable of making a successful adjustment to other work that exists in significant numbers in the nation economy," namely,

> hand packager (DOT:920.587-018), medium, unskilled, SVP:2 of which there are 400,000 such jobs available in the national economy; garment folder (DOT: 789-687-066), light, unskilled, SVP:2 of which there are 150,000 such jobs available in the national economy; and compact assembler (DOT: 739.687-066), sedentary, unskilled, SVP:2 of which there are 150,000 such jobs available in the national economy[.]

(Tr. 26-27.)

On May 6, 2016, the Appeals Council denied Stuessi's request for a review (Tr. 1-6). On June 17, 2016, Stuessi submitted his complaint to this Court, which was filed on July 14, 2016, following the grant of Stuessi's application to proceed *in forma pauperis*. (ECF Nos. 1, 2.) The matter was fully briefed by March 2, 2017.[2] (Pl.'s Br. (ECF No. 15); Def.'s Opp. (ECF No. 16); Pl.'s Reply (ECF No. 17).)

## II. STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

---

[2] On April 13, 2018, the matter was reassigned pursuant to Standing Order 18-2. (ECF No. 18.) On October 15, 2018, the matter was reassigned back to the undersigned. (ECF No. 19.)

with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). "Substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). However, a reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Eligibility for supplemental security income requires the same showing of disability as for disability insurance benefits. 42 U.S.C. § 1382c (a)(3)(A)-(B). Disability insurance benefits may not be paid under the Social Security Act (the "Act") unless plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or

4

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920; *see Plummer*, 186 F.3d at 428; *Pallo v. Comm'r of Soc. Sec.*, No. 15-7385, 2016 WL 7330576, at *11 (D.N.J. Dec. 16, 2016). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he is not disabled and is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140.

Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not disabled and is denied benefits. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is medically equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has

satisfied his burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, then the ALJ must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, the ALJ moves on to step four, where the claimant must prove whether he retains the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. This involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted).

The first sub-step requires the ALJ to make a determination as to the claimant's RFC, which "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945(a)(1), and is determined "based on all the relevant medical and other evidence in [his] case record," *id.*; 20 C.F.R. § 416.920(e). RFC is used at the fourth and fifth steps to determine if the claimant can do either his past relevant work (step four) or can adjust to other work (step five). 20 C.F.R. § 416.920(e). If the claimant is determined to be able to perform previous work at step four, the claimant is not

disabled. *Id.* The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428.

Finally, at step five, if it is determined the claimant is no longer able to perform his or her previous work, the burden of production shifts to the Commissioner to show the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

## III. DECISION

Stuessi challenges the ALJ's decision, arguing: (1) the decision is not supported by substantial evidence because it is based on a hypothetical question that does not reflect all of Stuessi's impairments supported by the record; and (2) the ALJ failed to properly weigh medical opinion evidence. These arguments are intertwined, and therefore, the Court will address them together.

Stuessi argues the hypothetical question asked by the ALJ of the VE was "based on the [RFC] determination eventually adopted in the ALJ," "partially limit[ing] contact with co-workers and supervisors but includ[ing] no term or condition that there would ever be any behavioral extremes." (ECF No. 15 at 10 (citing Tr. 59).) Stuessi contends that, because the question was no sufficiently limited, the VE "found there were jobs in the economy that such a hypothetical person could perform," whereas "[l]ater questions [by Stuessi's attorney] elicited testimony from the [VE] that employers would not tolerate behavioral extremes and problems with maintaining basic

7

hygiene, like those described in the record." (*Id.* (citing Tr. 59-61).) Stuessi maintains he "will show that the hypothetical question and RFC finding were both defective, because they failed to reflect all of [] Stuessi's impairments supported by the record." (*Id.* at 13.)

Significantly, Stuessi does not thoroughly challenge the ALJ's RFC determination. In all but two places, Stuessi's argument relates to the actual question posed to the VE and not the RFC determination on which the question relied. Indeed, Stuessi admits the question was based on the RFC finding (ECF No. 15 at 13), but does not put much effort into arguing the underlying RFC determination was deficient. However, Stuessi argues the ALJ failed to properly weigh medical opinion evidence, and to that end, the Court will consider those arguments in its review of the RFC determination and the VE hypothetical. (*See* ECF No. 15 at 16 ("Agency mental health sources documented that [] Stuessi's medical conditions produced other categories of mental limitation some of which were not adequately reflected in the hypothetical question to the VE, *or in ALJ decision's residual functional capacity finding*." (emphasis added)).)

At the supplemental hearing on December 19, 2014, the VE testified as follows:

> EXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE:
>
> Q    12th grade, yeah. Okay. High school graduate. No past work in a younger individual. I just have to open up something. All right. Here we go. Who is capable of performing simple routine tasks at all exertional levels. The individual must work in a low stress environment, which I will define as follows. The individual can have occasional contact with co-workers and supervisors but no direct work-related contact with the public. The individual cannot work on teams or in collaboration with others. The individual can only make simple decisions. And can only adapt to occasional changes in essential work tasks. Would there be work such an individual could perform.
>
> A    With those limitations, yes, Your Honor, there would be jobs and those jobs would include hand packager, DOT number 920.587-018. The job is medium with an SVP of 2. The job exists in numbers

in excess of 400,000 in the national economy. Garment folder, DOT number 789.687-066. The job is light with an SVP of 2. The job exists in numbers in excess of 150,000 in the national economy. Compact assembler, DOT number 739.687-066. The job is sedentary with an SVP of 2. The job exists in numbers in excess of 150,000 in the national economy.

Q     Okay. Thank you. I'd like you to further assume that the individual would be unreliable at work and by that – unreliably would not go to work on a reliable basis and by that I mean would miss work an average two to three days per month on a regular and continuing basis. What effect would that have on your testimony?

A     A limitation with that frequency of absences would preclude any work in the national economy.

Q     Okay. And assume that if the individual would be unable to sustain extended periods of attention and concentration, and by that I would mean the individual would be off task at least 20 percent of the workday, what effect would that have on your testimony?

A     That would also preclude any work in the national economy.

ALJ: Okay. All right. Counsel, questions?

ATTY: Yes, Your Honor.

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

Q     Based on the three jobs that you listed earlier

A     Yes.

Q     If somebody were to be regularly inconsistent with their grooming to the point where their body odor is severe enough to distract co-workers, things like that, would that be tolerated in the workforce?

A     No.

Q     And then my final question, and this is based on a note from the psych CE in Exhibit 6F where the doctor noted that he would have difficulty dealing with routine stress in a work environment. So if he were -- if the hypothetical person were unable to deal with any kind of stress or changes in the work environment and would respond with verbal aggression or throwing things, as the records

>    indicate, how would that -- would that be tolerated in the work environment?
>
> A     Just so I'm clear, cannot --
>
> Q     Cannot.
>
> A     -- tolerate?
>
> Q     Correct.
>
> A     Oh, no. There would be no jobs.
>
> ATTY: Okay. Those are all of my questions, Your Honor.

(Tr. 59-61.)

Stuessi argues the ALJ's hypothetical question only documented the following capacities: (1) simple and routine tasks at all exertional levels; (2) low stress environment; (3) occasional contact with co-workers and supervisors; (4) no direct work-related public contact; (5) no work in teams or in collaboration with others; (6) only simple decision making; and (7) only adapt to occasional work changes. It does not address, as Stuessi contends, his "documented behavioral extremes, impaired work pace, or problems in regularly meeting basic neatness and cleanliness standards." (ECF No. 15 at 18-19.) Further, to the extent the ALJ may have found Stuessi is not impaired by those limitations, he asserts the ALJ failed to provide any legally supportable rationale for such a decision. (*Id.*)

"A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004); *Plummer*, 186 F.3d at 431. When an ALJ incorporates a claimant's limitations into a hypothetical, "great specificity" and accuracy is required. *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002). In posing hypothetical questions to the VE, the ALJ may not substitute his or her own expertise to refute the record's

evidence of the claimant's limitations. *Christie v. Comm'r of Soc. Sec. Comm.*, 489 F. App'x 581, 585 (3d Cir. 2012); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Plummer*, 186 F.3d at 429.

The Court looks to whether the question reflected all impairments supported by the record. *Ramirez*, 372 F.3d at 546. Because Stuessi concedes the hypothetical posed by the ALJ directly relied on the RFC finding, the Court construes his argument as challenging whether the RFC is supported by the record and whether the Commissioner met its burden at step five. (ECF No. 17 at 6.)

In making an RFC determination, an ALJ "must consider all evidence before him." *Burnett*, 220 F.3d at 121 (citing *Plummer*, 186 F.3d at 429). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Id.* An ALJ must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* (citing *Cotter*, 642 F.2d at 705).

An ALJ need not fully credit a complainant's own testimony about her pain, but he must nevertheless "take care to address such evidence in the course of his findings." *Smith v. Astrue,* 359 F. App'x 313, 317 (3d Cir. 2009). Further, regarding a treating physician's opinion, the ALJ may reject it outright "only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). As to state agency medical or psychological consultants, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or

psychological consultant." 20 C.F.R. §416.927 (e)(2)(ii). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

The Court finds the ALJ erred, as a matter of law, by failing to assign weight to portions of the opinions of Defendant's state agency medical experts Drs. Herman Huber and Jane Shapiro.[3] Drs. Huber and Shapiro assessed Stuessi's workplace mental limitations in the areas of sustained concentration and persistence, social interaction, and adaptation (Tr. 68-70), but the ALJ only addressed adaptation, without explanation as to why the other limitations—Stuessi's ability to adhere to standards of neatness and cleanliness and to maintain work pace—were not identified or given weight. Without reference to Drs. Huber and Shapiro's assessment of these limitations, the Court cannot tell if the evidence was not credited or simply ignored. *See Fragnoli*, 247 F.3d at 42.

This is particularly troubling because other experts' reports supported the limitations found in Drs. Huber and Shapiro's reports. However, because those limitations were not reflected in the RFC, they were not used at step five to determine Stuessi's disability status. For example, the ALJ noted Stuessi has "situational anxiety in which he can become irritable and he has occasional temper flare-ups" despite becoming more stable with medication. (Tr. 23.) With respect to concentration or work pace, the ALJ noted Dr. Friedman found Stuessi has "situational anxiety which would make dealing with stress, related to more than simple, routine tasks, difficult." No reference to medication is made here. (*Id.*) Further, in determining the RFC, the ALJ states Stuessi's statements are not credible, but does not explain why and does not identify any inconsistent statements. *See* SSR 16-3P, 2016 WL 1119029, at *8 (S.S.A. Mar. 16, 2016) ("In determining whether an individual's symptoms will reduce his or her corresponding capacities to

---

[3] The Commissioner concedes the ALJ did not reference certain limitations, but argues it is harmless error. The Court disagrees.

perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, we will consider the consistency of the individual's own statements.").

Stuessi's attorney incorporated these limitations into her questions for the VE, and the VE testified no jobs would be available. But the limitations were not included in the RFC, and the ALJ's decision does not explain why. Based on the VE's testimony that jobs were not available to someone with the limitations Stuessi asserts, the Court cannot know whether the Commissioner would have been able to carry its burden at step five if these limitations were included in the RFC. Therefore, the matter is remanded for the ALJ to clarify its findings regarding the RFC and Stuessi's limitations pertaining to his ability to adhere to standards of neatness and cleanliness and to maintain work pace.

## IV. CONCLUSION

For the reasons set forth above, the matter is **REMANDED** for further proceedings consistent with this opinion.


**Date:** October 31, 2018  　　　　　　　　　　　　*/s/ Brian R. Martinotti*　　　　
　　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**